[Cite as *Piqua Store & Lock, L.L.C. v. Miami Cty. Bd. of Zoning Appeals*, 2023-Ohio-1403.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| PIQUA STORE AND LOCK, LLC | : | |
| | : | |
| Appellant | : | C.A. No. 2022-CA-30 |
| | : | |
| v. | : | Trial Court Case No. 22 CV 126 |
| | : | |
| MIAMI COUNTY BOARD OF ZONING APPEALS | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 28, 2023

. . . . . . . . . . .

THOMAS J. BUECKER and DUSTIN M. DAVIS, Attorneys for Appellant

CHRISTOPHER L. ENGLERT, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Piqua Store & Lock, LLC, appeals from the trial court's judgment affirming the Miami County Board of Zoning Appeals' denial of a conditional-use permit to operate a storage facility.

{¶ 2} Piqua Store & Lock ("PS&L") contends the trial court abused its discretion in

finding the denial of its application to be supported by a preponderance of the substantial, reliable, and probative evidence. In particular, PS&L challenges the trial court's finding that its proposed use was inconsistent with a comprehensive plan developed by the City of Piqua. PS&L maintains that Piqua's plan was irrelevant and that there was no evidence to support the trial court's conclusion in any event. PS&L also contends the trial court erred in failing to conduct its own hearing. PS&L argues that another hearing was necessary because the Board of Zoning Appeals ("BZA") deprived it of an opportunity to cross-examine witnesses.

{¶ 3} We conclude that the BZA and the trial court had discretion to consider the City of Piqua's comprehensive plan when evaluating PS&L's application. We note too that inconsistency with Piqua's plan was not the trial court's only reason for affirming the BZA's decision. Finally, we see no error in the trial court's failure to conduct an evidentiary hearing. Although PS&L contends the BZA denied it an opportunity to cross-examine opposing witnesses, the BZA hearing transcript does not reflect any desire, request, or attempt by PS&L to cross-examine anyone. Under these circumstances, the trial court was not required to hold an additional hearing to protect PS&L's rights. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} PS&L owns a 15.7-acre parcel of land at the northeast quadrant of the intersection of Looney Road and County Road 25A in Miami County. The property is zoned A-2 general agriculture. In January 2022, PS&L applied for a conditional-use permit to develop the property for commercial storage. PS&L proposed a four-phase

development. As relevant here, the first two phases involved preparing the lot and erecting two three-sided metal buildings to be used for commercial storage of boats and recreational vehicles. BZA staff evaluated the application and submitted a report to the BZA members recommending approval with conditions requiring natural screening along residential properties to the east and requiring a parking-lot review.

{¶ 5} PS&L's application proceeded to a March 17, 2022 hearing before the BZA. The first witness was staff member Jackson Bennett. He testified about Miami County Zoning Resolution 22.11(C), which sets forth general standards for conditional uses, and the staff's conclusion that PS&L had satisfied those requirements. Also testifying in favor of the application were the property owner, Jerry Voisinet, his daughter (a co-owner of PS&L), and PS&L's attorney, Tom Buecker. The BZA heard additional favorable testimony from a Piqua resident who lives next to one of Voisinet's existing store-and-lock businesses.

{¶ 6} In opposition to the application, the BZA heard testimony from Andrew Johnson, an attorney representing both a real-estate company and the Indian Ridge Homeowners' Association, which is part of the Indian Ridge residential subdivision development bordering the subject property to the east. Indian Ridge developer Rob Alexander also testified in opposition to the application and answered questions from the board. The next witness was Will Harrelson, an attorney representing the City of Piqua. Among other things, he opined that the proposed use failed to satisfy zoning-code requirements and was inconsistent with separate comprehensive plans developed by the City of Piqua and Miami County. Finally, a number of area residents testified in opposition

to the application. Most of them lived in the adjacent Indian Ridge subdivision. They expressed concerns ranging from decreased property values and increased vehicular traffic to concerns about transients, rodents, storage of hazardous materials, and human trafficking.

{¶ 7} At the conclusion of the hearing, the BZA unanimously voted to deny PS&L's application. The BZA memorialized its ruling in a March 17, 2022 written decision. PS&L appealed that decision to the trial court. Based on its review of the administrative record, the trial court affirmed the BZA's denial of a conditional-use permit. In its October 24, 2022 decision and judgment entry, the trial court focused on the nine requirements for a conditional-use permit found in Miami County Zoning Resolution 22.11(C). The trial court reasoned:

There is no dispute that Appellant submitted evidence supporting a finding that the application complied with the nine factors listed in the Zoning Resolution. However, opposing parties also submitted evidence that showed several of the factors were not proven. The March 17, 2022 hearing before Appellee has been fully transcribed, and the Court was able to review the full record below. The evidence presented shows that the proposed use was not in accordance with Piqua's comprehensive plan; the use was not harmonious with the existing or intended character of the vicinity; the use was disturbing to existing neighboring uses; and the use would involve activity and traffic detrimental to nearby residents. The Board members made specific findings indicating opposing evidence was credible and

reliable, and they found Appellant's proposed use was not in accordance with the findings required to support a conditional use under Resolution 22.11(C). Mr. Bosse stated that four of the listed factors were not shown, and Mr. Williams and Mr. Hoekstra both found the seventh factor was not proven.

The Court agrees, and finds that the use was not in accordance with the comprehensive plan of the City of Piqua, which has annexed land bounding the Property; the proposed use will change the character of the area north of County Road 25A to discourage future residential uses; and the proposed use will involve activities and traffic that will be detrimental to residents near the Property. The Court finds Appellee's denial of the application is not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence before it. Therefore, the Decision of Appellee to deny the application for conditional use of the Property is hereby AFFIRMED.

{¶ 8} PS&L appealed to this court from the trial court's judgment affirming the BZA's denial of a conditional-use permit.

## II. Standard of Review

{¶ 9} The well-established standards governing BZA appeals are as follows:

* * * "R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political

subdivisions, including municipal boards of zoning appeals. R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal. It provides that 'the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.' The statute further provides that the court's judgment may be appealed by any party to the court of appeals 'on questions of law.' " *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 22, quoting R.C. 2506.04.

"The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03 * * *." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Cleveland Clinic* at ¶ 24, citing *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

In contrast, the court of appeals has a standard of review that is "more limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). The court of appeals may "review the judgment of the common

pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Id.* at 34, fn. 4, quoting R.C. 2506.04.

An " 'abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

*Penewit v. Spring Valley Bd. of Zoning Appeals*, 2d Dist. Greene No. 2019-CA-6, 2019-Ohio-3200, ¶ 18-21.

### III. Analysis

{¶ 10} PS&L advances two assignments of error:

I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE MIAMI COUNTY BOARD OF ZONING APPEALS' DENIAL OF THE CONDITIONAL USE APPLICATION OF PIQUA STORE AND LOCK, LLC WAS SUPPORTED BY THE PREPONDERANCE OF THE SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE.

II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE ADMINISTRATIVE APPEAL WITHOUT HOLDING FURTHER HEARING TO

ENSURE APPELLANT'S RIGHT TO CROSS EXAMINATION.

{¶ 11} In its first assignment of error, PS&L challenges the trial court's determination that a preponderance of the evidence supported the BZA's decision. The issue PS&L raises is a narrow one. As framed by PS&L, "[t]he issue in this case is the [trial court's] conclusion and reliance on this idea that the intended use is not consistent with the City of Piqua Comprehensive Plan." PS&L insists that "no evidence" was presented to support this conclusion. According to PS&L, "[t]here was no testimony presented under oath and subject to cross examination of any witness who presented that evidence." PS&L asserts that the trial court could not rely on unsubstantiated public opinion to find the proposed use to be inconsistent with Piqua's comprehensive plan. Finally, PS&L reasons that the Piqua's plan was irrelevant because the subject property is not in Piqua.

{¶ 12} We begin our analysis with Miami County Zoning Resolution 22.11(C), which governs conditional-use permits. It provides that the BZA "shall review the particular facts and circumstances of each proposed use" and "shall find adequate evidence showing that such use" satisfies each of nine requirements. The second of those requirements is that the proposed use "[w]ill be in accordance with the general objectives, or with any comprehensive plan and/or the Zoning Resolution."

{¶ 13} During the BZA hearing, discussion occurred about whether PS&L's proposed facility was in accordance with separate comprehensive plans developed by the City of Piqua and Miami County. At one point, a question arose regarding the relevance of Piqua's plan. The City of Piqua borders the subject property to the east,

where the growing Indian Ridge residential subdivision is located. However, the subject property itself sits in Miami County outside of the Piqua city limits, leading one board member to question the relevance of Piqua's comprehensive plan. Ultimately, the BZA and the trial court found Piqua's plan to be relevant in light of Zoning Resolution 22.11(C)'s directive to evaluate the proposed use in light of "any comprehensive plan." The BZA determined that "any comprehensive plan" included Piqua's plan despite the fact that the subject property was not in Piqua. In its decision, the trial court also found that the proposed use was not in accordance with Piqua's comprehensive plan.

{¶ 14} Upon review, we reject PS&L's argument that the record contains "no evidence" that its proposed use was inconsistent with Piqua's plan. The most direct evidence on the issue was sworn testimony from Will Harrelson, the attorney representing the City of Piqua. Harrelson explained why he believed the proposed storage facility was not in accordance with either Miami County's comprehensive plan or Piqua's plan. With regard to Piqua's plan, he testified that it envisioned the land around the intersection of Looney Road and County Road 25A being a "village mixed use" economic-expansion area. *See* BZA Hearing Transcript at 60-64. Harrelson described that area, which would be the location of PS&L's proposed facility, as a "gateway" to the Indian Ridge subdivision development to the east. He explained that Piqua's plan called for "civic, mixed use, and neighborhood retail" establishments in the area. Explaining what that meant, Harrelson continued:

> The civic services talks about government buildings, libraries, museums, churches, auditoriums, fire stations, hospitals, schools. The

mixed use * * * talks about a variety of housing types and land uses within a walkable distance, paths, streets and lanes serve mixed use developments, including of civic uses is to be encouraged. And what we're looking at here is the kind of neighborhood mix use that would be conducive to having 160 acres of development right next door. Coffee shops, dry cleaners, optometrist offices in a mixed use facility, a couple of offices, rest—maybe a small restaurant. There's a variety of neighborhood uses that is crucial to what the economic plan is and the economic interest is for this whole section of the city of Piqua and this part of Miami County.

*Id.* at 63.

{¶ 15} In short, Harrelson opined that Piqua's comprehensive plan would be satisfied if the land surrounding the intersection of Looney Road and County Road 25A were developed to be "the gateway to mixed residential, light commercial, light office, [and] light retail." *Id.* at 71. In his opinion, PS&L's proposed storage facility was not harmonious with such development plans. Having reviewed Harrelson's testimony, we conclude that it constituted substantial, reliable, and probative evidence about PS&L's intended use being inconsistent with Piqua's comprehensive plan.

{¶ 16} On appeal, PS&L appears to suggest that that Harrelson was not competent to testify about whether the proposed storage facility was in accordance with Piqua's comprehensive plan. *See* Appellant's Brief at p. 3-5. PS&L fails to develop this argument, however, and we see no reason why Harrelson could not opine on the issue. He appeared at the hearing on behalf of the City of Piqua. He was sworn in as a witness, and he testified based on his familiarity with Piqua's plan. We see nothing improper about his testimony.

Moreover, the only "evidence" necessary for the BZA to assess the compatibility of PS&L's proposed use with Piqua's comprehensive plan was a copy of the plan itself. Although Harrelson's testimony may have assisted board members in understanding the issues, the BZA's determination required simply comparing PS&L's conditional-use application with the terms of Piqua's comprehensive plan.

{¶ 17} As for PS&L's remaining argument, whether Piqua's plan was relevant is a closer question. We are not convinced that Zoning Resolution 22.11(C)'s reference to "any comprehensive plan" obligated the BZA to consider comprehensive plans from other jurisdictions. In our view, the reference to "any comprehensive plan" more likely means any comprehensive plan that Miami County itself might have adopted.

{¶ 18} Regardless, the BZA's and the trial court's questionable reading of Zoning Resolution 22.11(C) does not constitute grounds for reversal for at least two reasons. First, Harrelson presented the BZA with a good argument that Miami County's own comprehensive plan was consistent with Piqua's plan in some ways. Most significantly, Miami County's plan explicitly recognized the existence of residential growth in the area emanating from Piqua. For that reason, Miami County's plan stressed that "[d]evelopment in general should be sensitive to its impact upon farmland and drainage considerations as well as the impact and compatibility to existing residential land uses."

{¶ 19} When assessing the compatibility of PS&L's intended use with existing residential land uses, the BZA had discretion to consider the plans and desires of the City of Piqua given the municipality's neighboring location adjacent to the subject property and the existence of the Indian Ridge residential subdivision. As Harrelson argued before the

BZA, "the city of Piqua has an economic interest in what happens here and * * * the county's comprehensive plan is consistent with the city's comprehensive plan" with respect to maintaining sensitivity to residential uses. *See* BZA Hearing Transcript at 65.

{¶ 20} Finally, even if we assume, arguendo, that that BZA should not have considered Piqua's comprehensive plan, no basis exists to reverse the trial court's judgment. In addition to finding that PS&L's proposed facility was not in accordance with Piqua's plan, the trial court determined that at least three other prerequisites in Miami County Zoning Resolution 22.11(C) had not been satisfied. As set forth above, the trial court stated: "The evidence presented shows that the proposed use was not in accordance with Piqua's comprehensive plan; the use was not harmonious with the existing or intended character of the vicinity; the use was disturbing to existing neighboring uses; and the use would involve activity and traffic detrimental to nearby residents." The trial court then specifically found that "the proposed use will change the character of the area north of County Road 25A to discourage future residential uses; and the proposed use will involve activities and traffic that will be detrimental to residents near the Property."

{¶ 21} The trial court's findings demonstrate that it believed PS&L had not met the requirements of Zoning Resolution 22.11(C)(3) (the proposed use must "be designed constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area"), Zoning Resolution 22.11(C)(4) (the proposed use must "not be hazardous or disturbing to existing or future

neighboring uses"), or Zoning Resolution 22.11(C)(7) (the proposed use "[w]ill not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or odors").

{¶ 22} On appeal, PS&L does not address any of the foregoing findings by the trial court or attempt establish that the preponderance of the substantial, reliable, and probative evidence fails to support them. Instead, PS&L's assignment of error challenges only the BZA's and the trial court's consideration of Piqua's comprehensive plan. Therefore, PS&L has failed to demonstrate an abuse of discretion in the trial court's affirmance of the BZA's decision. Accordingly, the first assignment of error is overruled.

{¶ 23} In its second assignment of error, PS&L contends the BZA deprived it of its right to cross-examine opposing witnesses. As a result, PS&L claims the trial court should have held another evidentiary hearing and afforded it that right.

{¶ 24} PS&L cites R.C. 2506.03, which provides that an administrative appeal to the trial court is limited to the administrative transcript unless certain conditions exist. One condition is that the appellant was "not permitted" to cross-examine opposing witnesses. *See* R.C. 2506.03(A)(2)(c). In such a case, "the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party."

{¶ 25} PS&L's argument is unpersuasive because the BZA did not prohibit cross-examination. PS&L has not cited and we have not found any instance during the BZA hearing where PS&L desired, requested, or attempted to cross-examine anyone. PS&L cannot forego cross-examination, obtain an adverse decision, and then seek to retry its

case with cross-examination.[1]  Absent any effort by PS&L to conduct cross-examination, we cannot say that it was "not permitted" by the BZA to do so. *In re Petition for Annexation of 550.626 Acres*, 2d Dist. Montgomery No. 13398, 1992 WL 361909, *7 (Dec. 9, 1992) ("In this case, we find nothing to indicate that Petitioners were refused permission to cross-examine the General Manager of the Conservancy District[.]").[2]  Having found no infringement on PS&L's right to cross-examination, we overrule the second assignment of error.

## IV. Conclusion

{¶ 26} The judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.

---

[1]  Although PS&L did not attempt to conduct any cross-examination, we note that the BZA did allow PS&L's attorney, Tom Buecker, to provide rebuttal testimony addressing concerns raised by witnesses who opposed the storage facility. *See* BZA Hearing Transcript at 99-103.

[2]  *In re Petition for Annexation of 550.626 Acres* involved affidavit testimony presented in a hearing before a county board of commissioners. This court recognized that the affidavit constituted proper evidence but also acknowledged the impossibility of cross-examining an absent affiant. This court reasoned, however, that "[t]he inability to cross-examine affiants at an administrative, or any other, hearing arises not from the administrative tribunal's refusal to permit such cross-examination, but from the fact that such cross-examination is impossible." *Id.* at *6. We then upheld the trial court's refusal to hear additional evidence, explaining: "By interpreting R.C. 2506.03 as restricting the admission of additional evidence to cases in which cross-examination was not permitted, rather than inherently impossible, we reinforce the general rule confining the trial court's review to a consideration of the transcript. Were we to adopt the Petitioners' interpretation, and enlarge the category of cases where additional evidence may be presented from only those cases in which cross-examination was not permitted to all cases in which cross-examination was *not possible*, we would both violate the plain meaning of the rule, and eviscerate its substance." *Id.*