[Cite as *Woodstock Solar Project, L.L.C. v. Rush Twp. Bd. of Zoning Appeals*, 2025-Ohio-567.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

WOODSTOCK SOLAR PROJECT, LLC  :
:
    Appellee  :  C.A. No. 2024-CA-24
:
v.  :  Trial Court Case No. 2022 CV 088
:
RUSH TOWNSHIP BOARD OF  :  (Civil Appeal from Common Pleas
ZONING APPEALS  :  Court)
:
    Appellants  :

. . . . . . . . . . .

O P I N I O N

Rendered on February 21, 2025

. . . . . . . . . .

JACK A. VAN KLEY & JANE A. NAPIER, Attorneys for Appellants

ANNE MARIE SFERRA & KARA HERRNSTEIN, Attorneys for Appellee

. . . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Rush Township zoning inspector Bradley Herron appeals from a judgment of the Champaign County Court of Common Pleas, which found a stop work order he had issued to be invalid and vacated the order. For the reasons that follow, the judgment of

the trial court will be reversed.

### I.      Facts and Procedural History

{¶ 2} In 2018, Woodstock Solar Project, LLC ("Woodstock") began to develop a solar energy project in Rush Township, Champaign County. To build the facility, Woodstock entered into lease agreements with local landowners. In all, Woodstock acquired 500 acres of land, and of that, solar panels will be installed on 209 acres.

{¶ 3} Once built, the project will contain numerous solar panels placed on top of a metal or aluminum framework. The panels will be connected to each other with wiring which will transmit electricity to a Dayton Power & Light substation directly across the street. From there, the electricity will be delivered into a larger transmission system managed by the PJM regional wholesale electric grid. This regional transmission organization is responsible for powering about a dozen states ranging from Illinois in the west to New Jersey in the east. When completed, the Woodstock Solar Project will have a capacity of 40 megawatts – enough energy to power approximately 6,700 homes.

{¶ 4} In March 2022, Woodstock applied for a conditional use permit to use the land as a "Public Service Facility" or, in the alternative, as a "Light Manufacturing Facility" as defined in the Rush Township Zoning Resolution. On March 30, 2022, Herron, the township zoning inspector, rejected the application for a conditional use permit, reasoning that the project would not fit within the parameters of a conditional use in Rush Township and therefore was ineligible to be considered by the Rush Township Board of Zoning Appeals ("BZA").

{¶ 5} Woodstock filed an appeal of Herron's determination with the Rush Township

BZA and, after a hearing on the matter, the BZA voted to reject Woodstock's appeal. Upon receipt of a short, written decision from the BZA, Woodstock appealed to the Champaign County Court of Common Pleas pursuant to R.C. 2506.01. The trial court reversed, finding that the decision of the BZA was "not supported by substantial, reliable, and probative evidence. Instead, there is substantial, reliable, and probative evidence from which to conclude that Woodstock is a public utility and therefore exempt from the Rush Township Zoning Resolution." Trial Court Decision at 23. In June 2023, we affirmed the trial court's decision in *Woodstock Solar Project, LLC v. Rush Twp. Bd. of Zoning Appeals*, 2023-Ohio-2215 (2d Dist.), and the Ohio Supreme Court declined jurisdiction.

{¶ 6} During the pendency of that case, however, Governor DeWine signed H.B. 501, a bill that amended R.C. 519.213(B) to give township trustees and BZAs greater authority to regulate solar facilities, especially "small solar facilities," which were designated as those with a single interconnection to the electrical grid and a power capacity of less than 50 megawatts.

{¶ 7} On July 3, 2023, Rush Township amended Sections 564 and 1237-60 of its zoning code to allow "accessory" solar facilities (those designed to supply electricity for on-site usage) but prohibited "production" solar facilities (those below 50 megawatts but designed to supply electricity to the electrical grid at-large). The changes became effective on August 2, 2023.

{¶ 8} On June 20, 2024, the Rush Township zoning inspector issued a notice of zoning violation (also known as a stop work order) to Woodstock. The notice alleged that the project, if constructed, would be a "Principal Solar Energy Production Facility" as

defined by Rush Township Zoning Ordinance Section 1237-60, which violates Section 564's prohibition of those in the township. It further stated that the township zoning ordinance had banned industrial solar facilities since July 2022 and noted that in April 2023, the legislature had amended R.C. 519.213 to authorize townships to regulate solar facilities smaller than 50 megawatts. "Accordingly, the language of the Zoning Ordinance has been effective to prohibit the construction of the Project in Rush Township since that time. . . . Consequently, pursuant to Section 1000 of the Zoning Ordinance, I hereby order Woodstock Solar to discontinue and refrain from any further field activities for the Project." The notice did not contain any information regarding Woodstock's right to appeal.

{¶ 9} On July 2, 2024, Woodstock mailed and e-mailed a response to the notice of violation in the form of a letter; the Rush Township board of trustees and fiscal officer were copied as recipients of the letter. Woodstock's response argued that the notice of violation was "invalid, unlawful, and unenforceable" because of the common pleas court's previous judgment, which had determined that the project was a public utility. Further, the letter argued that retroactive application of the zoning ordinance violated Woodstock's right to due process of law, i.e., enforcement of the zoning ordinance infringed on its vested property rights. Woodstock demanded that the stop work order be withdrawn and that the township govern itself according to the common pleas court's January 25, 2023 judgment. Woodstock stated that it was "prepared to pursue all available remedies and enforce its rights under the Court Order." Woodstock did not appeal the order to the BZA.

{¶ 10} Several weeks later, on July 31, 2024, Woodstock filed a contempt motion in the Champaign County Court of Common Pleas asking the BZA and the zoning

inspector to show cause why they should not be held in contempt for failing to comply with the trial court's 2023 decision finding that the proposed Woodstock facility was a public utility and exempt from zoning regulations. It also sought recission of the stop work order, statutory penalties under R.C. 2705.05(A), and to "reopen [the prior proceedings] for the purpose of enjoining further interference with the solar project." Sept. 24, 2024 Decision. On September 24, the common pleas court issued a journal entry finding stop work to be invalid and ordering the Rush Township zoning inspector to vacate the order. *Id.*

{¶ 11} The zoning inspector, Herron, has appealed, raising five assignments of error. We will address them in a manner that facilitates our analysis.

## II.    Administrative Appeals

{¶ 12} In his first and second assignments of error, Herron makes several arguments, including that the trial court erred when it held that the stop work order was inconsistent with its 2023 entry, that Woodstock should have first filed an appeal with the BZA before appealing to the trial court, and that the trial court erred when it adjudicated Woodstock's "vested right" claim. We begin our analysis with the question of whether Woodstock should have gone directly to the common pleas court to address the stop work order or, instead, appealed to the BZA.

{¶ 13} According to R.C. 519.14, a BZA may "[h]ear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of sections 519.02 to 519.25 of the Revised Code, or of any resolution adopted pursuant thereto." This recourse is also codified in

Rush Township Zoning Code Section 1014. In fact, Ohio courts have held that, in most cases, a party must exhaust administrative remedies (such as appealing to the BZA) before seeking resolution in the trial court.

{¶ 14} "It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29 (1980). "The doctrine is a court-made rule of judicial economy that allows the agency to function efficiently and to afford it an opportunity to correct its own errors while benefiting the parties and the courts by virtue of the agency's experience and expertise. In this way, a record adequate for judicial review will be compiled." *Morris v. Morris*, 2004-Ohio-6059, ¶ 42 (2d Dist.).

{¶ 15} There are two exceptions to the rule. First, an administrative appeal may be bypassed "if there is no administrative remedy available which can provide the relief sought, or if resort to administrative remedies would be wholly futile." *Id.* at ¶ 35. Second, exhaustion of remedies may be bypassed when the available remedy is onerous or unusually expensive. *Id.*

{¶ 16} If a party is unsuccessful at the BZA, it may appeal the decision to the court of common pleas as provided by R.C. 2506.01. The trial court may find the decision to be unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. R.C. 2506.04. "Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from

with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." R.C. 2506.04.

{¶ 17} In this case, it is Herron's belief that Woodstock's skipping the appeal of the stop work order to the BZA and going directly to the common pleas court for a contempt order and injunctive relief was improper because Woodstock did not exhaust its administrative remedies; the legal arguments discussed by Woodstock and accepted by the trial court were irrelevant because the court should not have heard them in the first place. Woodstock, on the other hand, contends that an appeal to the BZA would have been futile and that the administrative remedies were inadequate, thereby involving the exceptions of the administrative exhaustion rule. We agree with Herron.

{¶ 18} A zoning inspector's stop work order is properly appealable to the BZA under R.C. 519.14 and Section 1014 of the Rush Township zoning ordinance. *See Mega Outdoor, L.L.C. v. Dayton*, 2007-Ohio-5666 (2d Dist.); *Pataskala Banking Co. v. Etna Twp. Bd. of Zoning Appeals*, 2008-Ohio-2770 (5th Dist.); *Lamar Advertising of Youngstown, Inc. v City of Alliance*, 2018-Ohio-2389 (5th Dist.); *Drackett v. Danbury Twp. Zoning Bd. of Appeals*, 2010-Ohio-6506, ¶ 32 (6th Dist.) (decisions of the zoning inspector may be challenged by appeal to the board of zoning appeals). As such, unless an exception to the administrative exhaustion rule applied, Woodstock was required to appeal the stop work order to the BZA before going to the trial court.

{¶ 19} Woodstock claims, however, that the administrative remedy would have been inadequate. "The administrative remedy of an appeal to the BZA is inadequate because it does not comport with due process." Appellee's Brief at 19. Woodstock argues

(without support) that the township should have offered a hearing *before* issuing the stop work order. We find, however, that the administrative remedies Woodstock had were more than adequate to satisfy due process requirements.

**{¶ 20}** "A procedural-due-process challenge concerns the adequacy of the procedures employed in a government action that deprives a person of life, liberty, or property." *Ferguson v. State*, 2017-Ohio-7844, ¶ 42; *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971); *Stewart v. Lockland School Dist. Bd. of Edn.*, 2015-Ohio-3839, ¶ 11. This opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Dayton v. Siff*, 2023-Ohio-4685, ¶ 69 (2d Dist.).

**{¶ 21}** Woodstock had the statutorily-created right to appeal the zoning inspector's stop work order to the BZA. *See* R.C. 519.14; Rush Twp. Zoning Code Sections 1012-1016. At such a hearing, the aggrieved party may call and cross-examine witnesses who will testify under oath and present evidence. *See* R.C. 519.14-15; *Piqua Store and Lock, LLC v. Miami Co. Bd. of Zoning Appeals*, 2023-Ohio-1403, ¶ 5-6 (2d Dist.); *Woodstock*, 2023-Ohio-2215, at ¶ 5. The proceedings are memorialized with the votes of the members and their examinations and other official actions kept as public records. Rush Twp. Zoning Code Section 1013. From there, the unsuccessful party may appeal the ruling of the BZA to the court of common pleas, which is "authorized to reverse a final decision of a board of zoning appeals if, after a review of the complete record, it finds that the board's 'decision is unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable, and probative evidence.' " *Willow Grove, Ltd.*

*v. Olmstead Twp. Bd. of Zoning Appeals*, 2022-Ohio-4364, ¶ 16, quoting R.C. 2506.04. Through the administrative appeals process, there was an opportunity to be heard in a meaningful manner; Woodstock chose not to follow that process. It is noteworthy that Woodstock took advantage of the administrative appeals process with respect to the prior order when the zoning inspector denied its request for a conditional use permit. It appealed to the BZA, was unsuccessful, and then appealed to the common pleas court, which subsequently ruled in its favor.

{¶ 22} Woodstock's strongest argument, which we acknowledge as legitimate, is that upon an unfavorable ruling, a township could continually amend its zoning rules to tie up the opposing party in the administrative appeals process, creating what could be an unending cycle of litigation and the indefinite delay of the project. In that case, "no appellate court decision involving administrative agency action could ever be relied upon." Appellant's Brief at 19. This argument has two flaws, however. First, it relies on the assumption of townships acting in bad faith, purposely skirting the adverse court order. Second, it would undercut the administrative appeals process. A party would not trouble itself with appealing to the BZA when the party knew it could get a favorable ruling in the trial court. The legislature intended for rulings of administrative officials (like the zoning inspector) to be addressed first by the BZA and *then* by the trial court. While Woodstock raises an important concern, we must give effect to the legislature's wishes.

{¶ 23} It is also important to note that in this case in particular, the hearing at the BZA would have been central to creating a factual record. Woodstock's substantive argument is that the administrative appeals process is irrelevant because it has a vested

right to build its solar facility, even with the change in the law and zoning code.

{¶ 24} "A vested right is the right to initiate or continue the establishment of a use or construction of a structure which, when completed, will be contrary to the restrictions or regulations of a recently enacted zoning ordinance." Zeigler, *Rathkopf's The Law of Zoning and Planning* (4th Ed. 2005), Section 70:2; *Abdalla Ents. v. Liberty Twp. Bd. of Trustees*, 2011-Ohio-5085, ¶ 21 (12th Dist.). "[W]here no substantial nonconforming use has been made of property, even though such use is contemplated, and money has been expended in preliminary work to that end, a property owner has acquired no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property." *Smith v. Juillerat*, 161 Ohio St. 424, 433 (1954). That means the determination of whether a right is vested is extremely fact specific, and the BZA hearing was where those facts should have been developed.

{¶ 25} Further, we do not believe that Woodstock's show cause motion was the proper vehicle to address its concern with the stop work order. Woodstock's previous litigation with Rush Township was based on the zoning inspector's failure to issue a conditional use permit to build the proposed solar facility, but this litigation is based on an issue that did not exist before – the stop work order – which arose out of a new zoning law. It is unclear how, under the new circumstances, the township or its zoning inspector could be in contempt of the previous court order.

{¶ 26} Finally, we must address an assertion by Woodstock at oral argument that the letter sent to Herron and the township trustees (from what appears to be corporate counsel at its parent company) was actually an appeal to the BZA. We find nothing about

the letter that indicates it was to initiate a BZA appeal. It was not addressed to the BZA and it did not ask for a hearing; it only argued that the stop work order was invalid. According to a post-argument filing on the part of Herron, counsel (after oral argument) discovered that Woodstock had sent the letter in email form to the members of the BZA on July 23, 2024, three weeks after it was sent to Herron and the trustees. Even accepting that as true – there is no evidence of the email in the record – we would still find that the letter did not resemble a BZA appeal. Additionally, the attorney who authored the letter, Joseph Hackney, is not licensed in Ohio according to the Ohio Supreme Court attorney database and does not have a pro hoc vice registration. Accordingly, any filing from him would be invalid. *State ex rel. Army of Twelve Monkeys v. Warren Cty. Court of Common Pleas*, 2019-Ohio-901, ¶ 6-7; *Barr v. Intermark Internatl., Inc.*, 1992 WL 206779 (2d Dist. Aug. 28, 1992); *State ex rel. Nicodemus v. Indus. Comm.*, 5 Ohio St.3d 58, 60 (1983) (applying the principle to administrative appeals).

{¶ 27} Because Woodstock was required to first appeal the stop work order to the BZA, we must conclude that the trial court had no authority to issue its September 24, 2024 entry finding the stop work order invalid and ordering its vacation. Herron's first and second assignments of error are sustained.

### III. Conclusion

{¶ 28} Having sustained the first and second assignments of error, we need not address assignments of error three through five. The judgment of the trial court is reversed.

. . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.