[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willow Grove, Ltd. v. Olmstead Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2022-Ohio-4364.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4364

WILLOW GROVE, LTD., APPELLANT, *v.* OLMSTED TOWNSHIP BOARD OF ZONING APPEALS ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willow Grove, Ltd. v. Olmstead Twp. Bd. of Zoning Appeals*, Slip Opinion No. 2022-Ohio-4364.]

*Civil law—Zoning—Administrative appeals under R.C. Chapter 2506—Interpretation of zoning resolutions—The column heading in a township zoning-resolution schedule serves as more than a guidepost and must be read substantively because the heading uses specific terminology that is defined within the resolution—Judgment reversed and cause remanded.*

(No. 2021-1087—Submitted June 15, 2022—Decided December 9, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 109319, 2021-Ohio-2510.

_____

**BRUNNER, J.**

**{¶ 1}** The question presented in this case is whether a column heading in a schedule contained in a township zoning resolution is substantive and must be read as part of the resolution or may be viewed simply as a "guidepost" in the same manner in which we might view organizational elements, such as titles and section headings, in statutes. Because township-zoning-resolution schedules provide the details of a law, albeit in table format, we cannot presume that a heading in such a schedule has no legal significance. This is especially so when—as we determine here—the heading contains a term that is defined in the resolution and when ignoring the heading would change the resolution's meaning completely.

## I. BACKGROUND

**{¶ 2}** In 2013, appellant, Willow Grove, Ltd., applied to the Olmsted Township Building Department seeking a zoning certificate that would allow it to construct 202 single-family townhomes on a single parcel of land. Willow Grove proposed that each townhome would have a driveway that would connect to a single street running through the development and that street would connect to an already existing road. The proposal also included plans to construct a swimming pool and a community center for use by the townhome residents and their guests, with eight off-street parking spaces to accommodate both facilities.

**{¶ 3}** The township's zoning inspector denied Willow Grove's application. Willow Grove sought review of that decision by appellee Olmstead Township Board of Zoning Appeals ("the BZA").[1] An attorney for Willow Grove and two Willow Grove representatives attended the two-part hearing that ensued. Willow Grove argued that some of the Olmsted Township Zoning Resolution ("OTZR")[2]

---

1. Olmsted Township is also an appellee in this matter. We will refer to appellees collectively as "the BZA."

2. The parties agree that the OTZR passed on March 9, 2000, as amended through May 2012, is applicable here.

sections cited by the zoning inspector in his letter denying Willow Grove's zoning application did not apply to the proposed development. Willow Grove argued that the setbacks and other restrictions of the OTZR should not apply to the swimming pool, because the pool constituted an accessory use[3] of the land being developed—i.e., use of the pool would be incidental to the principal use[4] of the land, which would be the development of 202 single-family townhomes. Willow Grove also took the position that condominium-association rules would be in place to address many of the concerns expressed by the BZA.

{¶ 4} One of the BZA's concerns was the number of off-street parking spaces Willow Grove had planned for the swimming pool and community center. Section 310.04 of the OTZR regulates "[t]he number of off-street parking spaces for each facility or use" with the number of spaces determined "by application of the standards noted in Schedule 310.04." That schedule consists of two columns: the right-hand column sets forth the number of spaces or the method of calculating the number of spaces required for off-street parking for each of the principal buildings or uses identified in the left-hand column. *See* Zoning Resolution of Olmsted Township Section 310.04, Schedule 310.04.

{¶ 5} The schedule includes eight categories of principal buildings or uses—labeled (a) through (h)—and each category contains a subset of more specific primary buildings or uses. The subsections relevant here appear in the schedule as follows:[5]

---

3. Section 110.02(b)(102) of the OTZR defines "accessory use" as "[a] use of land incidental to the principal use of a lot or building located on the same lot."

4. Section 110.02(b)(103) of the OTZR defines "principal use" as "[t]he primary or main use or activity of a building or lot."

5. Footnote "(a)" to Schedule 310.04 in the OTZR notes that a minimum of five spaces is required for any facility other than the residential uses listed in subsection (a)(1).

**Schedule 310.04**
**Required Off-Street Parking Spaces**

| Principal Building or Use | Minimum Spaces Required[a] |
|---|---|
| (a) Residential Uses: | |
|     (1) Single-family Dwellings and Two-family Dwellings | 2 spaces per dwelling unit, both of which be enclosed |
| * * * | * * * |
| (e) Commercial Entertainment/Recreational Uses: | |
|     (10) Swimming Pools, Public and Private (not associated with residences) | 1 space per 50 sq. ft. of defined active recreation area, including water, lawn, deck and bathhouse |
| * * * | * * * |
| (h) Community Facilities: | |
|     (2) Library, Museum, Art Gallery, Community Center or similar public or semi-public building | 1 space for every 4 seats in any assembly area plus 1 space per 500 sq. ft. of remaining floor area |

*Id.* The zoning inspector determined that Willow Grove's proposed development plan did not comply with subsection (e)(10) of the schedule for construction of the swimming pool or with subsection (h)(2) for construction of the community center.

{¶ 6} At the BZA hearing, Willow Grove made several arguments regarding the minimum off-street-parking requirements under these sections. Willow Grove argued that subsection (h)(2) did not apply to parking for the community center, because the center would be a private facility for use by residents of the development and not a "public or semi-public building." Similarly, Willow Grove argued that subsection (e)(10) was inapplicable because the pool *would be* associated with the townhome residences and therefore met the exception to the off-street-parking requirement set forth in that subsection. As a practical

matter, Willow Grove expected that residents would walk from their townhomes to use the pool and the community center and that the garages and driveways associated with each of the 202 townhomes would therefore provide adequate parking for the residents and their guests who would be using those two facilities. Finally, Willow Grove explained that the proposed development plan furthered an important township design goal—avoiding a "sea of [unnecessary] parking."

{¶ 7} The BZA was skeptical of Willow Grove's parking plan, especially given the zoning inspector's estimate that under Schedule 310.04, the proposed development would require a minimum of 25 parking spaces for the community center alone. After one BZA member expressed concern about where Willow Grove would put 25 or possibly 54 parking spaces (presumably for both the community center and the pool), Willow Grove explained that that number of parking spaces would be necessary only if the pool or community center were considered primary uses but that many spaces would not be necessary for a swimming pool or community center that was used only by the residents of the development and their guests (i.e., an accessory use).

{¶ 8} The BZA affirmed the zoning inspector's decision denying Willow Grove's application for a zoning certificate. It agreed with the zoning inspector's assessment that Willow Grove's proposed development plan did not fully comply with required setbacks under the OTZR and that the planned community center and swimming pool did not have enough off-street parking spaces as required by the OTZR.

{¶ 9} Willow Grove appealed to the Cuyahoga County Court of Common Pleas under R.C. 2506.01. The common pleas court reversed in part and affirmed in part the BZA's decision. The court found that the setbacks at issue did not apply to Willow Grove's plan. It concluded that the principal use of the property was the development of 202 single-family townhomes. The court determined that the swimming pool that was planned as part of the development was an "accessory use"

of the property, being incidental to and located on the same lot as the principal-use buildings—the townhomes.

**{¶ 10}** The common pleas court found that the BZA had properly considered the health, safety, and welfare of the intended residents of the proposed development and their guests by applying the off-street-parking requirements in Schedule 310.04 despite Willow Grove's argument that by its express terms, the schedule regulates parking only for principal buildings or uses. Regardless of this planning defect, the court ordered the BZA to issue Willow Grove a zoning certificate for the proposed development. Both Willow Grove and the BZA appealed to the Eighth District Court of Appeals.

**{¶ 11}** On appeal, the BZA objected to the lower court's order requiring it to issue a zoning certificate on the ground that Willow Grove's proposed development plan did not fully comply with Schedule 310.04 of the OTZR. 2021-Ohio-2510, ¶ 16. Willow Grove argued that the off-street-parking requirements set forth in the schedule regulated parking associated only with principal buildings or uses, and it relied on the schedule's left-hand column heading in support of that argument. *Id.* at ¶ 17-20. Willow Grove argued that because the trial court had found that the principal use of the property would be the development of residential townhomes, the schedule did not apply to the pool or community center, which would be accessory uses.

**{¶ 12}** The Eighth District found that the column heading "Principal Building or Use" in Schedule 310.04 was "a guidepost" that did not limit the schedule's application to only principal buildings or uses. *Id.* at ¶ 20. The court found that Section 310.02(a) of the OTZR requires the inclusion of a minimum number of parking spaces for any new building or new use, regardless of whether the new building or new use is principal, accessory, or conditional. *Id.* at ¶ 21. The court reasoned that because the proposed pool and community center would be new construction, they would be subject to the parking requirements set forth in

Schedule 310.04 of the OTZR, regardless of their use categorization (e.g., principal or accessory). *Id.*

{¶ 13} The court of appeals affirmed the common pleas court's decision regarding the setbacks and other applications of the OTZR; citing the common pleas court's findings of fact, it agreed that the pool would be an accessory use " '(1) incidental to the principal use of the property (attached single-family dwellings), (2) located on the same lot as the principal use because the property will be developed into condominiums, and (3) intended for use by residents and invited guests.' " 2021-Ohio-2510 at ¶ 34. However, the appellate court concluded that because Willow Grove's proposed development was deficient in its plan for required off-street parking, it had not fully complied with the OTZR. *Id.* at ¶ 24. The Eighth District thus held that a zoning certificate could not be issued. *Id.*

{¶ 14} Both Willow Grove and the BZA appealed to this court seeking discretionary review. We accepted the appeal only on Willow Grove's propositions of law, *see* 165 Ohio St.3d 1477, 2021-Ohio-4289, 177 N.E.3d 991, the first of which urges us to hold that the text of a heading in a table that is part of a zoning resolution is substantive and must be considered when applying the requirements contained in the table. The second proposition of law asks us to hold that when the primary buildings or structures of a plan fully comply with zoning regulations, a zoning certificate may be issued for those buildings or structures even if accessory buildings or uses do not comply with the zoning regulations. Willow Grove urges us to strictly construe the OTZR in favor of the property owner under *Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 421 N.E.2d 152 (1981).

{¶ 15} We adopt Willow Grove's first proposition of law and find its proposed development plan to be compliant with the OTZR. Therefore, the BZA must issue the zoning certificate to Willow Grove. Our holding in this regard renders Willow Grove's second proposition of law moot, so we do not address it.

## II.  ANALYSIS

### A.  *Standard of review in administrative appeals initiated under*
### *R.C. Chapter 2506*

{¶ 16} In an administrative appeal initiated under R.C. Chapter 2506, the common pleas court is authorized to reverse a final decision of a board of zoning appeals if, after a review of the complete record, it finds that the board's "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."  R.C. 2506.04. The common pleas court's decision may then be appealed on questions of law.  *Id.* The question of law at issue here is one of statutory construction, which we review de novo.  *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St. 3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25, citing *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 12.

{¶ 17} The BZA argues that pursuant to this court's decision in *Cleveland Clinic*, we are required to give deference to the Eighth District's decision in this matter.  This is not so.  In *Cleveland Clinic*, we explained that an appellate court's review of a common pleas court's decision on appeal from a zoning authority is "narrower and more deferential to the lower court's decision."  *Id.*  This is because the common pleas court is tasked with reviewing the " 'whole record,' including any new or additional evidence admitted under R.C. 2506.03."  *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).  In contrast, courts of appeals are authorized under R.C. 2506.04 to review only questions of law.  *Id.*, citing *Kasil v. Sandusky*, 12 Ohio St.30, 34, 465 N.E.2d 848 (1984), fn. 4.  Therefore, we must defer to the common pleas court's factual findings, but we need not defer to any legal conclusions reached by either the court of appeals or the common pleas court.  *See Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.*, ___ Ohio St.3d ___, 2022-Ohio-483, ___ N.E.3d ___, ¶ 15

("because this court reviews legal issues de novo, we are not constrained to accept the appellate court's legal analysis").

### B. *Interpretation of zoning resolutions*

{¶ 18} The question of law before us is whether the minimum parking-space requirements set forth in Schedule 310.04 of the OTZR apply to the swimming pool and community center in Willow Grove's proposed development plan. We interpret municipal ordinances and resolutions in the same manner as statutes. *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 30. Therefore, we answer the question before us by first reading the text of the OTZR to discern its meaning. *See State ex rel. Steele v. Morrisey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. If the meaning of the resolution is clear by a plain reading of its text, then we apply the resolution as written, without looking to other sources or applying tools of statutory interpretation. *See Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11.

{¶ 19} Our analysis should strive to give "significance and effect" to "every word, phrase, sentence and part" of the resolution, *Wachendorf v. Shaver*, 149 Ohio St. 231, 237, 78 N.E.2d 370 (1948), and we must avoid construing the resolution in a manner that would render words or phrases superfluous, meaningless, or inoperative, *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917). In this context especially, "[b]ecause zoning ordinances deprive property owners of certain uses of their property," *Henley* at 152, we should carefully examine the limitations in the OTZR and not impose limitations not supported by the text of the code.

### C. *The plain meaning of Schedule 310.04 of the OTZR*

{¶ 20} Section 310.04 of the OTZR regulates off-street parking, and it specifies the number of parking spaces required for each use set forth in a table identified as Schedule 310.04. A "schedule" may be defined as "a statement of

supplementary details appended to a legal or legislative document." *Merriam-Webster's Collegiate Dictionary* 1110 (11th Ed.2020). Or a "schedule" may be a "written list or inventory; * * * a statement that is attached to a document and that gives a detailed showing of the matters referred to in the document." *Black's Law Dictionary* 1612 (11th Ed.2019). We find that Schedule 310.04 is used by the OTZR in the customary way in which schedules are used—it provides certain necessary details of Section 310.04. Those details are the specific minimum off-street-parking requirements for the indicated uses, presented in corresponding columns.

{¶ 21} The heading "Principal Building or Use" tells the reader the type of details that will be found in the left-hand column of Schedule 310.04, and the heading "Minimum Spaces Required" tells the reader the type of details that will be found in the right-hand column. In that respect, both headings are "guideposts" because they indicate the type of information that follows. But these headings are also substantive. If the heading "Principal Building or Use" is removed from the left-hand column, the list of uses set forth in that column could apply to *any* use (e.g., primary use or accessory use). Similarly, if the heading of the schedule's right-hand column were altered, for example, to "*Maximum* Spaces Required," this would change our understanding of the information that is provided in that column. Changing either column heading in the schedule would change the meaning of the resolution section to which that schedule applies. We, therefore, cannot say that the column headings have no legal significance.

{¶ 22} Because the column heading "Principal Building or Use" is included in Schedule 310.04, we must give effect to that text and treat the uses that appear under that heading as subcategories of principal uses. It is not for us to say that the heading "Principal Building or Use" was arbitrarily included in the schedule. *See State ex rel. Carmean v. Hardin Cty. Bd. of Edn.*, 170 Ohio St. 415, 422, 165 N.E.2d

918 (1960) ("It is axiomatic in statutory construction that words are not inserted into an act without some purpose").

{¶ 23} Nor can we assign a different or more general meaning to the phrase used in the heading than what is expressed by the resolution itself. The OTZR defines "principal use," giving the term legal significance in the resolution. Therefore, we must apply that definition whenever "principal use" appears in Section 310.04 or its schedule. *See Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 275, 267 N.E.2d 781 (1971) ("Statutory definitions of terms are controlling in the application of the statute to which such definitions pertain"). We cannot ignore or change the meaning of a defined term simply because it is located in the heading of a schedule.

{¶ 24} The plain language of Schedule 310.04 establishes the minimum number of off-street parking spaces that is required only for the "Principal Buildings and Uses" specified therein. We note the one exception in Schedule 310.04, which also underscores our holding. Schedule 310.04(c)(8) expressly provides that a minimum amount of off-street parking is required for "[s]nack bars in association with a principal use." The inclusion of this exception indicates that the minimum parking requirements set forth in Schedule 310.04 apply to "Principal Buildings and Uses" only, unless expressly excepted therein.

{¶ 25} And while Section 310.02 of the OTZR may refer to minimum parking requirements for "*any* new buildings or uses" (emphasis added), as the court of appeals found, *see* 2021-Ohio-2510 at ¶ 21, the details of Schedule 310.04 specify that minimum off-street parking is required only if those new buildings or uses are principal ones. Because the lower courts found that the development of residential townhomes would be the principal use of the property in Willow Grove's proposed development plan, Schedule 310.04 applies only to the single-family townhomes. That schedule cannot be used to regulate off-street parking

associated with the pool or community center, because they would not be the principal uses of the property.

{¶ 26} The Eighth District relied on R.C. 1.01, which states that "Title, Chapter, and section headings * * * do not constitute any part of the law as contained in the 'Revised Code,' " to support its conclusion that the column headings in Schedule 310.04 may not be read substantively. *See* 2021-Ohio-2510 at ¶ 20. But R.C. 1.01 is not an " 'ordinary rule of statutory construction,' " and it applies only to enactments in the Revised Code. *State ex rel. Cunningham v. Indus. Comm.*, 30 Ohio St.3d 73, 76, 506 N.E.2d 1179 (1987), quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-497, 79 N.E.2d 553 (1948).

{¶ 27} R.C. 1.01 does not apply here, but it does illustrate the contrast between the nature of Revised Code titles and section headings and that of schedule headings in a township zoning resolution such as the one at issue here. Titles, chapters, and section headings in the Revised Code are labels that aid in the codification or publication process, which includes arranging the laws of the state on similar subjects in one place, with room for future amendment. *See* 1 Ohio Jurisprudence, Pleadings and Practice Forms, Section 1:4 (2022). Titles, chapters, and section headings in the Revised Code therefore serve to facilitate organization and provide clarity. *See id*. Further, because they may be added or modified by a publisher, we do not treat them as though they were deliberately included in the Revised Code by the General Assembly. *See Cunningham* at 76.

{¶ 28} The BZA relies on *State ex rel. Murphy v. Athens Cty. Bd. of Elections*, 138 Ohio St. 432, 35 N.E.2d 574 (1941), in support of its argument that courts may examine titles or headings when interpreting a statute. In that case, this court explained that "the heading or title given by a legislative body to a statute must be accorded consideration, but it may not be employed to alter the meaning of language that is unambiguous." *Id*. at 435. Importantly, titles and headings—especially those chosen by the legislative body, as opposed to ones placed there by

a publisher or codifier—might aid in discerning the intent of a law if its intent is not clear through its plain text. But again, those titles or headings serve more of an organizational function than the column heading in the zoning-regulation schedule at issue here.

{¶ 29} The BZA also relies on *Murphy* in support of its contention that Willow Grove's position on reading the headings in Schedule 310.04 substantively and impermissibly alters the zoning resolution's meaning. Quoting Section 310.01 of the OTZR in its merit brief, the BZA explains that the intent of the zoning resolution at issue is to " 'protect the public health, safety and welfare' by requiring *all* uses to have adequate off-street parking." (Emphasis sic.) However, the plain language of Schedule 310.04 does not say "all" uses—it says "Principal Building and Use." We do not find that anything in the text of Schedule 310.04 changes the meaning of or conflicts with the other parts of the OTZR as the BZA asserts.

{¶ 30} The BZA further argues that absolute precision is not required by drafters of legislation and that we should use the "common sense judicial construction" that the lower courts employed in interpreting the meaning of Schedule 310.04. The first problem with this argument is that Schedule 310.04 appears to have been drafted with precision, using a defined term as the heading of a column that contains the details of Section 310.04 of the resolution. We cannot presume that the drafters included some terms inadvertently or imprecisely and thereby supplant those words with an undefined "common sense" filter. Our principles of statutory construction do not work that way.

{¶ 31} Second, Willow Grove presented plausible arguments at the BZA hearing about why the parking requirements in Schedule 310.04 might apply only to principal uses, but it is not for us to second-guess what the legislative body intended. The drafters of the OTZR may have been using common sense, or they may have failed to adequately express their true intent. In either case, we are left with the words contained in the enacted resolution. When we can discern the

meaning of the words used by a plain reading of the text, our analysis is complete because " '[i]f a review of the statute conveys a meaning that is clear, unequivocal, and definite, the court need look no further.' " (Brackets added in *Apple Group, Ltd.*) *Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343, 41 N.E.3d 1185, ¶ 13, quoting *Columbus City School Dist. Bd. of Edn. v. Wilkins*, 101 Ohio St.3d 112, 2004-Ohio-296, 802 N.E.2d 637, ¶ 26. Therefore, we need not construe the resolution in favor of the property owner as Willow Grove proposes, or look to other parts of the OTZR, policy considerations, or tools of interpretation. We simply apply the resolution as it was written.

### III. CONCLUSION

**{¶ 32}** We hold that the column headings in Schedule 310.04 are substantive and cannot be ignored or used merely as a guidepost when applying the off-street parking requirements of the Olmsted Township Zoning Resolution. Our holding in this regard supports the approval of Willow Grove's application for a zoning certificate. We therefore reverse the judgment of the Eighth District Court of Appeals and remand this case to the Cuyahoga County Court of Common Pleas with instructions to order the Olmsted Township Board of Zoning Appeals to issue a zoning certificate to Willow Grove.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Berns, Ockner & Greenberger, L.L.C., Jordan Berns, Sheldon Berns, Majeed G. Makhlouf, and Paul M. Greenberger, for appellant.

Fishel, Downey, Albrecht & Riepenhoff, L.L.P., David A Riepenhoff and David C. Moser, for appellees.

Brosius, Johnson & Griggs, L.L.C., Jennifer L. Huber, Julia E. Donnan, and

Peter N. Griggs, urging affirmance for amicus curiae, Ohio Township Association.

_____