[Cite as *Davis v. Mansfield Planning Comm.*, 2023-Ohio-3048.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JULIAN DAVIS | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| CITY OF MANSFIELD PLANNING | : | |
| COMMISSION, ET AL. | : | Case No. 2023 CA 0009 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 21 CV 304


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     August 30. 2023


APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

ROBERT A. FRANCO                    JAKE MICHAEL LINN
1007 Lexington Avenue                30 North Diamond Street
Mansfield, OH  44907                   8th Floor
                                                        Mansfield, OH  44902

*King, J.*

{¶ 1}   Plaintiff-Appellant, Julian Davis ("Davis"), appeals the February 2, 2023 order of the Court of Common Pleas of Richland County, Ohio, affirming the demolition order issued by Defendants-Appellees, City of Mansfield Planning Commission and City of Mansfield Bureau of Buildings, Inspections, Licenses and Permits.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On March 28, 2017, the city of Mansfield issued a demolition order to Helen C. Davis, aka Carrie Helen Davis, the record owner of a house located on South Foster Street in Mansfield.  This order noted the structure was "deemed to be unsafe, to the life and health of children and the community * * *" and the structure "poses an imminent threat to health, potential fire [sic] and the safety of the neighborhood * * *."  Davis, Helen's nephew, appealed the order on her behalf to the planning commission.  Davis's notice of appeal did not appear to object to the finding the structure was dangerous nor did he cite the order lacked enough notice to reasonably appraise him of the necessary corrective steps to avoid demolition.  Davis also posted a bond as required by the municipal ordinances.

{¶ 3}   Davis appeared at the June 13, 2017 meeting where the planning commission heard his appeal.  One of the commission members asked Davis if he determined "what has to be done [to the house.]"  Davis answered affirmatively and stated, among other things, that framing and masonry work were required on one side of the house.  The commission also expressed concerns about the structural defects surrounding the chimney and the nearby exterior wall.  Although not directly stated, it

does not appear that the city required Davis to submit construction plans before or during the meeting, rather the commission relied on his verbal agreements to grant him six months to begin the repairs and return to the commission with an update; Davis agreed.

{¶ 4} Davis was unable to appear at the next meeting on March 13, 2018, because he was recovering from surgery the previous week. His cousin appeared and acknowledged that Davis had not performed any structural work on the house. Despite the lack of substantial progress, the commission gave Davis another extension until May of 2018. Davis returned on August 14, 2018. He reported tearing off parts of the house to access the basement wall that had been compromised by water. The commission was also informed by the building inspector that although Davis had submitted an electrical plan set, he had not submitted plans, received permits, or requested inspections. Davis claimed to have submitted plans for the whole house, but none of the plans were presented to the commission. Again, the commission engaged in a dialog with Davis about the work that needed to be performed, he agreed to it, and they gave him an extension of time.

{¶ 5} Over the next several years, this became the regular course of dealings between Davis and the city: Davis would update the commission that he performed no work or some work that was frequently unrelated to the structural defects, Davis would agree to perform work, and be given more time to complete it. Throughout his dealings with the commission, Davis never claimed to not understand what was expected of him to avoid the house's demolition.

{¶ 6} At some point, Helen passed away and Davis became the owner of the property in 2020. Over the course of four years from 2017, Davis received numerous

extensions and attended a dozen meetings with the commission wherein the appeal was discussed with Davis; he continuously failed to make important repairs, meet deadlines and benchmarks, and seek permits and inspections.

{¶ 7}   On May 25, 2021, the commission denied the appeal, finding Davis failed to remedy the situation by the deadline date of May 17, 2021.  Davis was notified via letter dated June 23, 2021.  On June 24, 2021, Davis filed an administrative appeal with the Court of Common Pleas of Richland County.  Davis alleged the city failed to provide proper notice, failed to present evidence that the house was a dangerous building, and applied the incorrect standard of "habitability."

{¶ 8}   An evidentiary hearing before a magistrate was held on October 28, 2021. The magistrate personally viewed the house and accepted testimony and exhibits.  By order filed October 29, 2021, the magistrate granted Davis more time to make repairs and listed specific items that needed to be completed by January 6, 2022.

{¶ 9}   A second evidentiary hearing before a magistrate was held on February 9, 2022.  Again, the magistrate personally viewed the house and accepted testimony.  By decision filed August 12, 2022, the magistrate found the city substantially complied with the notice requirements and the house was a "dangerous building," and affirmed the demolition order.  Davis filed objections.  By order filed February 2, 2023, the trial court disagreed with the objections and adopted the magistrate's decision.

{¶ 10} Davis filed an appeal with the following assignments of error:

I

{¶ 11} "THE TRIAL COURT ERRED BY FINDING THE CITY OF MANSFIELD (THE    'CITY')    SUBSTANTIALLY    COMPLIED    WITH    THE    MANDATORY

REQUIREMENTS OF CITY ORDINANCE § 1335.05(E) AND (F), REQUIRING A 'SPECIFIC ITEMIZATION OF THE DEFECTS AND CONDITIONS' GIVING RISE TO THE DETERMINATION THAT THE BUILDING NEEDS TO BE DEMOLISHED, AND 'A REFERENCE TO THE SECTION OR SECTIONS OF [A CODE] WHICH ARE BEING VIOLATED BY REASON OF THE DEFECTS OR CONDITIONS ENUMERATED,' WHERE THE CITY PROVIDED NEITHER IN ITS NOTICE."

II

{¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT THE SUBJECT PROPERTY WAS A 'DANGEROUS BUILDING,' WHERE THE UNCONTRADICTED TESTIMONY OF THE CITY'S WITNESSES WAS THAT THE BUILDING IN ITS CURRENT CONDITION WAS NOT DANGEROUS."

STANDARD OF REVIEW

{¶ 13} Under R.C. 2506.04, in an administrative appeal, the common pleas court considers the whole record, including any new or additional evidence, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, or unreasonable.

{¶ 14} As an appellate court, our standard of review to be applied in an R.C. 2506.04 appeal is "limited in scope." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of the substantial, reliable, and probative evidence,' as is granted to the common pleas court." *Id.* at fn. 4. *See also*

*Henley v. Youngstown Board of Zoning Appeals*, 90 Ohio St. 3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433.

{¶ 15} Although a court of appeals reviews a trial court's legal decisions de novo, a court of appeals applies the more deferential abuse of discretion standard to a trial court's factual determinations. *See Willow Grove, Ltd. v. Olmsted Township Board of Zoning Appeals*, 169 Ohio St. 3d 759, 764, 2022-Ohio-4364, 207 N.E.3d 779. *See also Henley* at 148 ("Accordingly, the court of appeals did not exceed the proper scope of review under that statute when it sought to determine whether Section 80 applied to the undisputed facts in the record, or whether the common pleas court abused its discretion by failing to apply Section 80").

{¶ 16} "[T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance" and "permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Foundation v. Cleveland Board of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30.

I

{¶ 17} In his first assignment of error, Davis claims the trial court erred in finding the city of Mansfield substantially complied with its notice requirements set forth in Mansfield Codified Ordinances 1335.05(e) and (f), requiring a " 'specific itemization of the defects and conditions' giving rise to the determination that the building needs to be demolished," and " 'a reference to the section or sections of [a code] which is or are being violated by reason of the defects or conditions enumerated.' " We disagree.

{¶ 18} The March 28, 2017 demolition notice sent to Helen C. Davis listed the subject property and stated the following:

The above described structure was inspected under the provisions of Chapters 1321, 1335 and 1371 of the City Codified Ordinances on **March 16, 2017** by **MIKE STARCHER** of the Bureau of Buildings, Inspections, Licenses and Permits and from such inspection it has been determined that the same is declared a nuisance and abandoned, based on the following: DEMOLISH ABANDONED WHITE 2 STORY VINYL SIDED FAMILY DWELLING WITH EXTERIOR STRUCTURE DAMAGES. REMOVE ALL ATTACHED DECKS, PORCHES, STEPS, ROOFING MATERIALS, RAILINGS, BED SIDEWALKS LEADING TO ANY FRONT, SIDE AND REAR DOORS. VACANT. NO UTILITIES. CONDEMNED. STRUCTURE DAMAGES AND DETERIORATION OF ENTIRE BUILDING DUE TO EXTENDED ABANDONMENT. GARBAGE, JUNK, LITTER, AND DEBRIS. THIS IS AN EYESORE AND POSES AN IMMINENT THREAT TO HEALTH, POTENTIAL FIRE AND THE SAFETY OF THE NEIGHBORHOOD AND IS TO BE DEMOLISHED UNDER THE CRITERIA DESCRIBED IN CHAPTER 1335 OF THE CODIFIED ORDIANANCES (SIC) OF THE CITY OF MANSFIELD.

This structure is **DEEMED TO BE UNSAFE**, to the life and health of children and the community and is ordered to obtain a licensed demolition contractor

to demolish and dispose of properly all debris from premise within **THIRTY (30) DAYS FROM THE DATE OF THIS ORDER.**

**You are hereby advised that this order can be appealed within TEN (10) (sic) from the date of this order under the provisions of Section 1335.07 of the City Codified Ordinances before the City Planning Commission * * *. PLEASE NOTE FAILURE TO APPEAL THIS ORDER WITHIN TEN (10) DAYS FROM RECEIVING THIS NOTICE WILL RESULT IN FURTHER PROCESSING OF DEMOLITION PROCEEDINGS.** (Emphasis sic.)

{¶ 19} Davis argues this notice failed to comply with Mansfield Codified Ordinances 1335.05 which governs Notice and Order under Chapter 1335, Repair and Demolition of Buildings. Specifically, he cites to subsections (e) and (f) which state the following:

When, from an inspection of a building, structure or premises, the Bureau of Buildings, Inspections, Licenses and Permits, the Health Department or the Bureau of Fire Prevention and Arson has determined that a building, structure or premises is insecure, unsafe, abandoned or vacant and open and unsecured to trespass, structurally defective, especially liable to fire, or endangers life, health or other buildings or property, a notice and order shall issue from the Bureau of Buildings, Inspections, Licenses and Permits to the owner or the person in charge and to the occupant of such

building, structure or premises which shall be substantially in the following form:

(e) A specific itemization of the defects and conditions in the building, structure or premises which required the determination made in subsection (d) hereof.

(f) A reference to the section or sections of the Ohio Revised Code and/or to the section or sections of any code of the City under the enforcement jurisdiction of the Bureau of Buildings, Inspections, Licenses and Permits, the Bureau of Fire Prevention and Arson or the Health Department which is or are being violated by reason of the defects or conditions enumerated in subsection (e) hereof.

{¶ 20} The magistrate found the notice substantially complied with subsection (e) by listing seven defects with the property. August 12, 2022 Magistrate's Decision at Conclusions of Law ¶ 22 and 25. As for subsection (f), the magistrate noted the planning commission admitted that the notice did not contain specific section numbers. *Id.* at ¶ 26. However, the magistrate found the notice referenced chapters of the Mansfield Codified Ordinances and that was sufficient to put Davis on notice "of defects in the property that warranted further examination of the ordinances and to direct him where to find the relevant sections." *Id.* at ¶ 29. The magistrate concluded the notice substantially complied with the intent and the form of Mansfield Codified Ordinances 1335.05. *Id.* at ¶ 30 and 31.

{¶ 21} Further, the magistrate found Davis was sufficiently noticed of his right to file an appeal. *Id.* at ¶ 32. Davis filed his appeal twenty-seven days late, yet the planning commission provided him with an opportunity to be heard. *Id.* The magistrate concluded "the essential requirements of due process, notice and an opportunity to be heard have been satisfied." *Id.* at ¶ 33.

{¶ 22} We begin by noting that Davis never objected to the notice failing to adequately comply with the city's notice ordinance. Previously, we have held the "[f]ailure to raise procedural errors during administrative proceedings results in waiver of the right to claim those errors in an appeal to the common pleas court under R.C. Chapter 2506 and subsequently to an appellate court." *Weinfeld v. Welling,* 5th Dist. Stark No. 2000CA00252, 2001 WL 361176, *5 (Apr. 9, 2001), citing *Zurow v. City of Cleveland,* 61 Ohio App.2d 14, 24, 399 N.E.2d 92 (8th Dist.1978). *See also Kachovec v. City of Akron,* 9th Dist. Summit No. 9948, 1981 WL 3982 (May 20, 1981). In the four years Davis repeatedly appeared before the commission, he never made this claim. It was only after the commission refused to give him still more time did he first raise this claim in the Court of Common Pleas. But then it was too late.

{¶ 23} Even if we were to find that Davis had not waived this claim, we agree with the magistrate's thorough analysis and find that he had sufficient notice. In support of his arguments, Davis cites this court's opinion in *Nucklos v. Board of Building Appeals,* 5th Dist. Stark No. 2001CA00092, 2001 WL 1606806 (Dec. 10, 2001). We, as did the magistrate, find the case to be distinguishable. In *Nucklos* at *4, the panel found the city of Canton issued a demolition notice without "a statement of the particulars in which the building or structure is unsafe" as required by Canton Codified Ordinances 1301.12. The

notice merely cited "vacant and severely deteriorated condition of the premises" and "the existence of numerous building code violations" which "constitute a public nuisance." The panel concluded "[w]hile appellants were advised that their building failed to comply with minimum housing standards, they were never informed exactly what repairs needed to be performed to bring the building up to code. Without such a statement of the 'particulars', appellants were, in essence, deprived of a reasonable time in which to repair the building." *Id.*

{¶ 24} To the contrary, in the case sub judice, the notice listed seven specific conditions and was more detailed than the *Nucklos* notice. As noted by the magistrate and supported in the record, Davis "claimed to have a full understanding of what was needed to renovate the property, ability to perform the renovations, and awareness of the permitting and inspection processes." (Footnotes omitted.) August 12, 2022 Magistrate's Decision at Findings of Fact ¶ 12. He had over four years to make repairs, but consistently failed to make the repairs, meet deadlines and benchmarks, and seek permits and inspections. *Id.* at ¶ 8 and 15-20. While the *Nucklos* panel was concerned with depriving appellants of a reasonable time in which to repair their building, Davis had "multiple opportunities and repeated extensions of time" to complete the repairs and therefore "was not deprived of a reasonable time in which to repair the building due to any deficiencies in the March 28, 2017 notice." *Id.* at Conclusions of Law ¶ 35 and 36. If Davis was confused as to what repairs needed to be made, he had a dozen "opportunities to be heard at meetings of the Mansfield Planning Commission to request specificity and clarify the Commission's expectations." *Id.* at ¶ 41.

{¶ 25} The magistrate concluded "there is a preponderance of reliable, probative and substantial evidence that the City of Mansfield Planning Commission has complied with the notice requirements which are a prerequisite to demolition as set forth in the City of Mansfield Codified Ordinances." *Id.* at ¶ 45. The trial court adopted the magistrate's decision. *See* Order on Appellants Objections to the Magistrates Decision filed February 2, 2023. Because Davis did not raise his objection before the commission regarding the city's failure to strictly follow section (f) of 1335.05, he has waived that argument. Based upon the foregoing and our review of the record, we find no error.

{¶ 26} Assignment of Error I is denied.

II

{¶ 27} In his second assignment of error, Davis claims the trial court erred in finding the house was a "dangerous building." We disagree.

{¶ 28} Mansfield Codified Ordinances 1335.02(a) defines "dangerous building" as "any building, wall, shed, fence or other man-made structure which is, in whole or part":

(1) Insecure, unsafe, abandoned or open and vacant and unsecured to trespass, structurally defective and unsafe to health, life and other property from any cause;

(2) Unsafe to the public health because of any condition which may cause or aid in the inception or spread of disease, or injury to the health of the occupants thereof or of its neighboring structures; or

(3) Is especially liable to fire, or maintains or creates a fire hazard to the premises or to adjoining property for any cause.

{¶ 29} In his appeal to the trial court, Davis raised for the first time a claim that the city wrongly imposed on him a habitability standard to avoid demolition; he contends he was only obligated to abate the dangerousness of the building to avoid the demolition order. Whether or not the city conflated the two standards, Davis is in no position to raise this particular error. For over four years, beginning with Davis's handwritten notice of appeal, he agreed to bring the building up to code in order to avoid its demolition. Thus, assuming the city in fact erred, it was an error Davis invited both initially and repeatedly. Accordingly, Davis cannot now raise that error. *Knott v. Revolution Software, Inc.*, 181 Ohio App. 3d 519, 2009-Ohio-1191, 909 N.E.2d 702, ¶ 81.

{¶ 30} We instead confine our review to whether the trial court erred in finding the structure to be dangerous under the municipal ordinance. It is undisputed at the time of the issuance of the notice, March 28, 2017, the house had severe structural damage and the entire house had deteriorated. The record from the planning commission includes numerous photographs of the house depicting the dilapidated condition. Davis attended multiple commission meetings and was always granted an extension to complete promised repairs and obtain required inspections. As acknowledged by Davis during a September 8, 2020 meeting, three years after the demolition notice, the house was "three quarters covered," meaning the house was not properly sealed and thus open to the elements. Commission Record at 68. The record contains photographs labeled "updates 05/20/2020" showing the condition of the house. The photographs include notations and show the house with a largely open roof causing severe water damage to the interior with possible mold issues; the second floor and wall studs were not properly supported which

may impact the support system for the second and third floors. During the May 25, 2021 meeting, Davis stated "[h]alf of the roof is done." Commission Record at 75. Davis was to call for an inspection by May 17, 2021, but failed to do so. At the May meeting, after four years, the planning commission voted to deny the appeal of the demolition notice; a formal decision was sent to Davis by a letter dated June 23, 2021. Davis appealed to the Court of Common Pleas.

{¶ 31} The magistrate held a hearing on October 28, 2021; she personally viewed the house and accepted testimony and exhibits on the condition of the house. Stephen Risser, the city building inspector who was also at the site-view, testified the house's foundation and roof were still incomplete. October 28, 2021 T. at 44-45, 50, 68. He opined the foundation could possibly be structurally unsafe based on his observations; water damage to the house because of the roof issues can undermine the structural integrity of the house. *Id.* at 45, 48. He could not testify to "the continuous load bearing path of that interior load bearing wall" because there was no access to the basement. *Id.* at 46. There were improper connections of how the second floor was attached to the first floor and problems with the stairs from the first floor to the second floor; these issues demonstrated structural insecurity. *Id.* at 46-48. Based on his observations, Risser testified the house has sustained structural damage. *Id.* at 51. He would not say it was in "imminent danger of collapse," but it was "not structurally sound enough to occupy." *Id.* He agreed if the current conditions continued, they could "eventually cause the conditions to collapse." *Id.* At a minimum, this testimony supports there was an ongoing violation under Mansfield Codified Ordinances 1335.02(a)(2).

{¶ 32} At the conclusion of the hearing, the magistrate gave Davis more time to complete eight specific repairs to bring the house up to code and set a deadline and second hearing for January 6, 2022. *Id.* at 96-97; Magistrate's Order filed October 29, 2021. The repairs ordered to be completed included repairing the foundation to comply with building codes and to install stairs to the basement so further inspection of the foundation and load bearing components can be had during the January hearing site-view. Davis was also ordered to request periodic building inspections as the ordered projects were completed. The magistrate informed Davis if the repairs are not done, "then I will have no hesitation about going ahead and allowing the City to demolish the property"; Davis stated he understood. October 28, 2021 T. at 93. The January hearing was continued to February 9, 2022. Davis was permitted to work on the house during the continued time.

{¶ 33} At the February 9, 2022 hearing, the magistrate again viewed the house and accepted testimony about the ordered repairs not being completed and how Davis failed to obtain required inspections. February 9, 2022 T. at 10-11, 13, 17-19, 25-26. The magistrate was unable to view the basement because the basement stairs were not installed as ordered. *Id.* at 28. Tim Brinley, the city building electrical inspector, went down a ladder to inspect the basement. *Id.* at 10, 28. He testified a basement wall was "bowed in and cracked open, in places approximately a half inch." *Id.* at 11. He stated "it is a possibility that it could continue to bow in and collapse." *Id.* When questioned on cross-examination about the house's "potential hazard to the safety of the house next door or passersby," Brinley stated, "as the structure itself falling down, I don't think it presents anything that way." *Id.* at 15. Marc Milliron, the manager of the Bureau of

Buildings and Codes, testified after the October hearing, Davis called for an inspection on January 5, 2022, then canceled the request because the January hearing scheduled for the next day had been continued. *Id.* at 17-18.

{¶ 34} The magistrate personally viewed the building on two occasions and was able to see what she perceived as dangerous conditions. Brinley testified there was the possibility that the building's basement wall could continue to bow in and collapse, "it's kinda like at the beginning stages." February 9, 2022 T. at 13. Given the fact that Davis has been agreeing and failing to make necessary repairs for five years, after receiving numerous extensions, it is not unreasonable to believe that the basement wall could give way and collapse the building. The foundation of the building and the load bearing wall have been ongoing concerns, but Davis never completed the basement stairs for a proper inspection. City inspectors had to traverse a ladder to get in and out of the basement during the February 2022 viewing.

{¶ 35} The magistrate noted the house was "structurally defective" at the time of the notice which was then, by definition under Mansfield Codified Ordinances 1335.02(a), a "dangerous building." August 12, 2022 Magistrate's Decision at Conclusions of Law ¶ 49. The magistrate found photographs from that time support that conclusion. *Id.* at ¶ 50. The magistrate acknowledged repairs had been made to the house over the last five years and analyzed all the changes. *Id.* at ¶ 51. First, the magistrate noted Davis failed to have anything inspected to see whether any of the repairs complied with the building code. *Id.* at ¶ 54. Through her two site-views, the magistrate determined the repairs "to nearly every major system in the house - - foundation, roof, framing, electrical wiring, plumbing, masonry, and drywall - either have not started, are incomplete, or remain

significantly structurally defective."  *Id.* at ¶ 56; *see* Findings of Fact ¶ 23, 24, 38.  The magistrate found at ¶ 58 three specific conditions remain "unsafe to heath" or "life":

> a. The grading remains unsafe as the ditch or trench was not filled in, creating a potential trip and fall hazard.
>
> b. The stairs are unsafe because there is movement in the stairs, indicating that the stairs are not properly supported and are structurally insecure; there is no mechanical ledger or stringer; and, there are no handrails on the staircases.  All of these conditions present potential collapse and/or falling hazards.
>
> c. The floors are unsafe because the flooring is rotten and broken up and the flooring contains voids and holes, creating a potential trip and fall hazard of fall-through hazard.

{¶ 36} The magistrate concluded, and the trial court agreed, the house remained "structurally defective" and "unsafe to health" or "life" and therefore was a dangerous building under Mansfield Codified Ordinances 1335.02(a).  *Id.* at ¶ 59.  Based upon Mansfield's definition of "dangerous building," we cannot find the trial court erred in so finding.

{¶ 37} Assignment of Error II is denied.

{¶ 38} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By King, J.

Gwin, P.J. and

Baldwin, J. concur.