[Cite as *Cheng v. Symmes Twp. Bd. of Zoning Appeals*, 2024-Ohio-2882.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| YIWEI CHENG, | : | APPEAL NO. | C-230668 |
|  |  | TRIAL NOS. | A-2203841 |
| JARROD TUCKER, | : |  | A-2203842 |
|  |  |  | A-2203843 |
| 10007 BENTCREEK, LLC, | : |  |  |
|  |  |  |  |
| AARON LANDOLT, | : |  |  |
|  |  |  | *O P I N I O N.* |
| and | : |  |  |
|  |  |  |  |
| KRISTIN LANDOLT, | : |  |  |
|  |  |  |  |
| Plaintiffs-Appellants, | : |  |  |
|  |  |  |  |
|  | : |  |  |
| vs. | : |  |  |
|  |  |  |  |
|  | : |  |  |
| SYMMES TOWNSHIP BOARD OF ZONING APPEALS, | : |  |  |
|  | : |  |  |
| and | : |  |  |
|  | : |  |  |
| SYMMES TOWNSHIP, |  |  |  |
|  |  |  |  |
| Defendants-Appellees. | : |  |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Judgment Entered

Date of Judgment Entry on Appeal: July 31, 2024

*Keating Muething & Klekamp, PLL, Sophia R. Holley* and *Taylor V. Trout*, for Plaintiffs-Appellants,

*Schroeder, Maundrell, Barbiere & Powers* and *Scott A. Sollmann*, for Defendants-Appellees.

**BERGERON, Presiding Judge.**

{¶1}    Blowback against short-term residential rentals like Airbnb prompted Symmes Township to regulate, if not outlaw, the rentals by enacting new zoning restrictions requiring a conditional use permit for the operation of such rentals.  The problem was that several property owners, including appellants Yiwei Cheng and Jarrod Tucker ("Cheng"), 10007 Bentcreek, LLC, ("Bentcreek LLC"), and Aaron and Kristin Landolt ("Landolts") (together, "Appellants") had previously purchased residential property and operated them as short-term rentals before the recent regulation.  When the township zoning inspector came knocking, he issued Appellants notice of their respective zoning violations.  Believing that the operation of their respective properties as short-term rentals constituted prior legal nonconforming uses, Appellants each appealed their notices of violation to appellee Symmes Township Board of Zoning Appeals ("Zoning Board").  The Zoning Board denied their appeals, and the trial court ultimately agreed, concluding that short-term rentals were not a legal nonconforming use because the properties were never used as single-family dwellings by Appellants (a conclusion never reached by the Zoning Board).  Appellants now appeal.  Having carefully reviewed the evidence and the record, we sustain Appellants' sole assignment of error and reverse the trial court's judgment.

I.

{¶2}    Appellants each purchased a property in Symmes Township with the intent to rent their respective properties as a short-term rental through Airbnb.  Appellants exclusively operated the properties as short-term rentals—the use of the properties is not contested in the underlying case or on appeal.  And all three properties were operational as rentals (with documented bookings) by February 2022.

3

{¶3} The three properties fall within the "B" residential zoning district. Symmes Township permits the following uses in "B" districts: agriculture, public and private forests and wildlife reservations, and single-family dwellings. Additionally, Symmes Township permits certain uses (like bed and breakfasts) within "B" districts contingent upon the township's approval of a conditional use zoning permit.

{¶4} In May 2022, the Symmes Township Board of Trustees adopted Resolution G2022-52, which amended the Symmes Township Zoning Resolution ("the Resolution"). Resolution G2022-52 defined "short-term rental" as "[a] dwelling unit or portion thereof, which is offered or provided to a guest by a short term rental owner or operator for a fee for a term of less than thirty (30) days." And it classified short-term rentals as conditional uses, requiring conditional use zoning permits.

{¶5} None of the property owners sought a conditional use permit. Resolution G2022-52 took effect in June 2022, and within a few weeks, a Symmes Township zoning inspector issued notices of violation to Appellants—determining that their properties were being operated as commercial short-term rentals without pending applications for conditional use permits. Asserting that their use of the properties as short-term rentals constituted a legal nonconforming use, Appellants each appealed their notices of violation to the Zoning Board.

{¶6} In October 2022, the Zoning Board heard the three appeals, ultimately concluding that because the Zoning Board had previously interpreted the properties as bed and breakfasts and later as hotels/motels (both of which require a conditional use permit), and Appellants failed to seek such permits, "the short-term rental use of the subject propert[ies were] not lawfully being made at the time the amendment became effective." Appellants immediately appealed the administrative decision, and

4

pursuant to their joint motion to consolidate, the three appeals were consolidated. In June 2023, the magistrate heard oral arguments. And in July 2023, the magistrate issued her decision—reversing the administrative decisions of the Zoning Board and determining that the operation of the properties as short-term rentals constituted a legal nonconforming use (without explaining the reasoning underlying her conclusion).

{¶7} The Township and the Zoning Board objected to the magistrate's decision. In October 2023, the trial court heard oral arguments, and the following month, it issued its final decision, rejecting the magistrate's decision and affirming the Zoning Board's conclusion that the operation of the properties as short-term rentals was not a legal nonconforming use. Specifically, the trial court reasoned that because Appellants exclusively used the properties as short-term rentals (and never as single-family residences for themselves), the properties did not fall within the common definition of "single-family dwelling," and thus, the initial use of the properties was not legal. Appellants now appeal, challenging the trial court's determination in a single assignment of error.

II.

{¶8} In Appellants' sole assignment of error, they contend that the trial court erred when it rejected the magistrate's decision holding that their properties were legal nonconforming uses. To advance their argument, they present two issues for our review: (1) the trial court erred in its interpretation of the Resolution; and (2) the trial court erred in holding that the properties are not entitled to prior nonconforming status. We first outline the standard of review and then address each argument in turn.

5

**{¶9}** Because courts generally defer to administrative agencies, the trial court can only "reverse a final decision of a board of zoning appeals if, after a review of the complete record, it finds that the board's 'decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.' " *Willow Grove, Ltd. v. Olmsted Twp. Bd. of Zoning Appeals*, 169 Ohio St.3d 759, 2022-Ohio-4364, 207 N.E.3d 779, ¶ 16, quoting R.C. 2506.04. This court's review of a trial court's decision on an appeal from a zoning authority is even "narrower and more deferential." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

**{¶10}** But while we "must defer to the [trial] court's factual findings, * * * we need not defer to any legal conclusions." *Willow Grove* at ¶ 17, citing *Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.*, 168 Ohio St.3d 439, 2022-Ohio-483, 200 N.E.3d 125, ¶ 15. Thus, when questions of law exist regarding statutory construction, this court reviews the issue de novo. *Id.* at ¶ 16-17, citing *Cleveland Clinic Found.* at ¶ 25, citing *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 12. And regarding questions of interpretation, "[w]e interpret municipal ordinances and resolutions in the same manner as statutes." *Id.* at ¶ 18, citing *Shampton v. City of Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 30. Because this case hinges on a question of interpretation of an ordinance—there are no factual disputes—we review the trial court's decision de novo.

A.

**{¶11}** First, Appellants contest the trial court's interpretation of the Resolution, ascribing error to its determination that the properties were not single-family dwellings (which was a lawful property use) because Appellants never occupied their respective properties. To determine whether the trial court erred when it interpreted the meaning of single-family dwelling, we first look to the language of the Resolution. When "the meaning of the resolution is clear by a plain reading of its text, [] we apply the resolution as written." *Id.*, citing *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11.

**{¶12}** The Resolution does not define single-family dwelling. It does, however, define the terms "dwelling" and "family," and generally, we derive meaning from a provision in the context of the ordinance in its entirety. *Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 35. The Resolution defines dwelling as "[a]ny structure or portion thereof which is designed or used for residential purposes." And family is defined as "a person or group of persons occupying a premises and living as a single housekeeping unit but as distinguished from a group occupying a boarding house, fraternity/sorority house, hotel or other type of contractual living quarters." Further, for words that are undefined, the Resolution provides that they "shall be construed as defined in the Hamilton County Building Code and in normal dictionary usage." The Hamilton County Building Code also lacks a definition for single-family dwelling, so we are left with the related definitions and the common usage of the term.

**{¶13}** The properties are indisputably dwellings: they are structures designed for residential purposes. And according to the plain language of the Resolution, the

7

properties are seemingly occupied by one "family" at a time. When examining whether a property is occupied by a single "family," the distinction between short-term and long-term rentals largely collapses, creating logical inconsistencies with the Zoning Board's reliance on any distinction. A member of the Zoning Board, in the initial hearing on the violations, clarified that long-term rentals (rentals for periods of at least 30 days) constituted a legal use of property: "[W]e are not telling the individual that you cannot have a rental. We're just saying that you now have new restrictions, 30 days or more, and you can still have your rental." Like persons occupying long-term rentals, persons occupying short-term rentals are "living as a single housekeeping unit" during their rental period (regardless of whether that period happens to be 3, 29, or 30 days). And unlike the exceptions to the definition of "family" explicitly enumerated in the resolution (boarding house, fraternity/sorority house, and hotel), the properties at issue are rented as a whole unit by one group, not rented by distinct individuals or groups on a room-by-room basis.

{¶14} Turning to the common usage of single-family dwelling, the trial court volunteered the following definitions in its decision:

a freestanding building designed for occupancy by one family (Cincinnati, Ohio, Code of Ordinances, Title XIV, Section 1401-01-S9); a dwelling either attached or semidetached, arranged, intended or designed to be occupied by a single family (Codified Ordinance of the City of Euclid, Ohio Section 1321.16); a residence housing one family or household or one that is designed for one family only (Definitions uslegal.com/s/single-family-dwelling-house/).

8

Examining these definitions (and without explaining its rationale), the trial court concluded that because "[n]one of the three properties in this case was ever *used* as a single-family dwelling by the current owners * * * the initial use was not legal and cannot now qualify as a legal-nonconforming use." (Emphasis added).

{¶15}  These three definitions are certainly not the only ways to define single-family dwelling.  But given that the trial court relied upon them and that the parties do not advance any alternative definitions, we proceed by reacting to the definitions presented to us.  By their plain language, these definitions lack any requirement that the property owner ever occupied the property.  Rather, the crux of these definitions is for what use the property was *designed*, not how it is currently operated.  From these definitions, it seems clear that, at minimum, the term single-family dwelling encompasses property *designed* for use by a single family.  We see no obligation in any of these definitions that any particular person, or indeed anyone at all, actually inhabit the property.  For instance, if a single-family dwelling sits vacant, that does not change its character into something other than a single-family dwelling.  The plain language of the term "single-family dwelling" thus supports Appellants' interpretation of that term rather than the trial court's.

{¶16}  And regardless, zoning regulations are "in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled." *Cleveland Clinic Found.*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 34, citing *In re Appeal of Univ. Circle, Inc.*, 56 Ohio St.2d 180, 184, 383 N.E.2d 139 (1978).  Therefore, even if after analyzing the plain language of the related definitions and common usage of single-family dwelling, we found the term ambiguous, we must "strictly construe[]" zoning regulations in favor of the property

9

owner. *Id.*, citing *Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261, 421 N.E.2d 152 (1981). Because "single-family dwelling" is undefined, it does admit of some ambiguity, but no definition presented to us supports the Zoning Board's determination. And even if we harbored some doubt on this point, we must construe the term in Appellants' favor.

{¶17} Ratifying these conclusions, the Zoning Board and the trial court relied on inconsistent rationales to support their determinations that the properties were not legal nonconforming uses. In the Zoning Board's decision, it found that, since 2021, it interpreted the properties to require conditional use permits. In 2021, the Zoning Board's inspector first cited the properties, claiming they needed conditional use permits because they were operating as bed and breakfasts. But later, seemingly acknowledging that the properties did not fall within the Resolution's definition of a bed and breakfast (because, as the trial court concluded, they were not owner-occupied), the Zoning Board changed its mind, modifying its classification of the properties to hotels/motels, which also require conditional use permits. Because Appellants did not seek conditional use permits, the Zoning Board concluded that "the short-term rental use of the subject propert[ies] was not lawfully being made at the time the amendment became effective."

{¶18} Before the trial court, perhaps appreciating the problems with their positions, the Zoning Board and Symmes Township shifted their argument, claiming that the use of the properties as short-term rentals was not a legal nonconforming use because it was "commercial activity" (and largely abandoning the argument that they required conditional use permits as hotels/motels). But this created another inconsistency because, as mentioned above, the Zoning Board itself had previously

10

conceded that the use of property as long-term rentals—also inherently commercial in nature—was legal.

{¶19} Recognizing the logical problems in the Zoning Board's interpretation, the trial court relied on yet another rationale—determining that while a single-family dwelling was a legal use of the property, the "initial use was not legal" because Appellants themselves never used their respective properties as single-family residences. The court seemingly reached this conclusion on its own, as the Zoning Board never advocated this point. The lack of any consistency here across the justifications offered by the Zoning Board and the trial court betrays the weakness in their foundations. And notably, from the perspective of the homeowner, the conflicting justifications create further confusion regarding the purported restricted uses of their property (pointing us further in the direction of construing the definition in Appellants' favor).

{¶20} Accordingly, in light of the plain meaning of the terms defined in the Resolution, the common usage of single-family dwelling, and the presumption to construe any ambiguity in favor of the property owners, we interpret the term single-family dwelling to include the properties at issue.

B.

{¶21} Next, Appellants argue that because the trial court improperly concluded that the properties were not single-family dwellings, it erred when it held that the property owners did not lawfully operate the properties as short-term rentals prior to the enactment of the Resolution. The Resolution defines a nonconforming use as "[a]ny use lawfully being made of any land, building, or structure on the effective date of these regulations or any amendment thereto rendering such use

11

nonconforming, which does not comply with all of the regulations of this Resolution or any amendment thereto." To prove a nonconforming use, the party must show (1) the use existed prior to the enactment of the regulation, and (2) the use in question was lawful when it was commenced. *Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, 180 N.E.3d 638, ¶ 120 (2d Dist.). And "[t]he party asserting a non-conforming use of property has the burden of proving such use." *Id.*

**{¶22}** Here, the parties have never disputed that the properties were operated as short-term rentals prior to the enactment of the Resolution; rather, they disputed the legality of this use. Thus, because we hold that the definition of single-family dwelling includes these properties (however utilized), we necessarily conclude that the trial court erred when it determined the use of the respective properties as short-term rentals was not a legal nonconforming use.

\*　　\*　　\*

**{¶23}** In light of the foregoing analysis, we sustain Appellants' sole assignment of error, reverse the judgment of the trial court, and enter judgment in favor of Appellants.

Judgment reversed and judgment entered.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.